1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

TAM K. NGUYEN and TOMY T. PHAM, husband and wife and the marital community property composed thereof,

CASE NO. C11-610 JCC

ORDER

11
12

Plaintiffs,

13

v.

14

ALLSTATE INSURANCE COMPANY,

Defendant.

15
16

This matter comes before the Court on Defendant's motions for partial summary

17

judgment (Dkt. Nos. 21 & 24). Having thoroughly considered the parties' briefing and the

18

relevant record, and having heard oral argument on June 19, 2012, the Court hereby GRANTS

19

the motions for the reasons explained herein.

20

**I.    BACKGROUND**

21

This case arises from an insurance policy issued to Plaintiffs by Defendant Allstate

22

Insurance Company. For the purposes of this case, the Court focuses on two types of property the

23

policy covers: dwellings and personal property. For both types of protection, the policy

24

established the same conditions for payment for a loss. Before any repairs or replacements occur,

25

Allstate makes a payment of the actual cash value ("ACV") of the damaged, destroyed, or stolen

26

property. This payment includes a deduction for the property's depreciation in value. The policy

then states that additional payment will be made as a reimbursement for cost in excess of the ACV if the insured repairs, replaces, or rebuilds the damaged, destroyed, or stolen property within 180 days of the ACV payment.[1] (Dkt. No. 23 Ex. A). The policy included coverage for the increase in living expenses if damage were to make the residence of the insured uninhabitable.

On or about February 23, 2010, Plaintiffs suffered fire damage to their residence located at 4605 125th Ave. SE, Bellevue, WA. (Dkt. No. 23 at 2.) On March 11, 2010, Allstate received notice that Plaintiffs had located a rental house in which to reside while repairs were made to their residence. Allstate issued a payment of $8,225.81, for first and last months' rent as well as a security deposit. (*Id.* at 3). On March 16, 2010, Allstate was notified that Public Adjuster Roger Howson was representing Plaintiffs on their dwelling, contents, and additional living expenses claims. (*Id.* at 4).

On March 16, 2010, Allstate issued a payment of $2,670.05 to ServiceMaster of Seattle for costs incurred in the cleaning of Plaintiffs' dwelling. On April 6, 2010, Allstate paid $387.85 to Alacrity for boarding up the Plaintiffs' dwelling. Through the rest of April, Allstate repeatedly informed Mr. Howson that they were still waiting for a repairs estimate.

On May 7, 2010, Mr. Howson submitted to Allstate a bid for repairs that had been prepared by McBride Construction, stating that the replacement cost value of the property was $99,088.86. (Dkt. No. 23 at 5). On May 17, 2010, Allstate called Mr. Howson to discuss differences between the McBride bid and the bid Allstate had obtained. (*Id.*)

On May 27, 2010, Allstate obtained its own estimate for the cost of repairs, stating that the replacement cost value of the property was $48,906.83. (*Id.* at 6). That same day, Allstate issued Plaintiffs a check for the replacement cost value, less a deduction of $9,675.47, for a total ACV of $39,231.36. (*Id.*)

---

[1] The policy contains several other conditions and exceptions that are not relevant in this litigation.

On June 9, 2010, Mr. Howson submitted a contents inventory proof of loss to Allstate in the amount of $126,156.22. (Dkt. No. 26, Howson Decl.) On June 10, 2010, Allstate informed Plaintiffs that their inventory was being reviewed. (Dkt. No. 23 at 6).

On June 18, 2010, McBride Construction submitted a repair estimate for $69,554.33. (Dkt. No. 23 at 5). Allstate began its review of the estimate. On June 21, July 22, and August 16, 2010, Allstate notified Plaintiffs that investigation of the claim was continuing. (*Id.* at 6–7). On August 17, 2010, Allstate requested that Plaintiffs submit to an examination under oath. (*Id.* at 7). After a short delay, the examinations were conducted on October 1, 2010. (*Id.*) During these examinations, Allstate learned that some items included in the personal property claim belonged to non-resident relatives, and other items lacked documentation related to purchase or acquisition. (*Id.* at 8). On October 14, November 1, and November 29, 2010, Allstate requested additional information from Plaintiffs which it claimed was necessary to conclude investigation of the claims.

On December 6, 2010, Allstate reviewed Plaintiffs' Proof of Loss for the additional living expenses claims and noticed that the rental costs were far lower than the $4000 Allstate had been paying. (*Id.* at 3). Plaintiffs' counsel did not provide an explanation for the discrepancy.

On December 6, 2010, Plaintiffs submitted a contents inventory that included items belonging to nonresidents. (*Id.* at 8). On December 7, 2010, Allstate notified Plaintiffs that it was willing to extend coverage for all claims. (Id.) In a January 3, 2011 letter to Mr. Howson, Allstate requested that the contents claim be modified to exclude property of nonresidents. (Id. at 9). On January 13, 2011, Allstate issued a payment of $5,724.10 to Certified Restoration Dry-cleaning Network under Plaintiffs' personal property claim. (*Id.*)

On February 4, 2011, Allstate advised Mr. Howson that it needed additional time to review the differences between the McBride repair bid and the Allstate estimate. (*Id.*) On February 25, 2011, Allstate wrote a letter to Plaintiffs confirming the settlement of the dwelling claim. That same day, Allstate issued a check for $49,196.22 to Plaintiffs for the ACV of the

1    personal property claim. On June 7, 2011, Allstate issued a payment to Certified Restoration Dry

2    Cleaning Network for $826.38 under Plaintiffs' personal property claim.

3        On July 11, 2011, Allstate completed its review of the McBride Construction bid. (*Id.* at

4    11.) The difference between the Allstate estimate and the McBride bid was $10,030.38. On

5    September 15, 2011, Allstate issued a $2,169.78 check to ServiceMaster of Seattle for the

6    cleaning of various items of Plaintiffs personal property. (*Id.*) On September 20, 2011, Allstate

7    issued Plaintiffs a check for $10,030.38, the difference between the two bids. (*Id.* at 11–12). On

8    September 23, 2011, Allstate issued a check for $9,675.46, the amount of depreciation on

9    Plaintiffs' dwelling.

10        Despite a series of delays, for which the parties dispute responsibility, Allstate ultimately

11    issued payments on Plaintiffs' personal property claim totaling $67,891.34, on Plaintiffs'

12    dwelling claim totaling $61.995.11, and on Plaintiffs' additional living expenses claims totaling

13    $24,225.81. (*Id.* at 12).

14        Plaintiffs do not claim that any outstanding payments are owed. Instead, they claim that

15    these payments were unreasonably delayed. As a result, Plaintiffs bring claims for breach of

16    contract, bad faith, violation of provisions of the Washington Administrative Code ("WAC"),

17    violations of the Consumer Protection Act ("CPA"), and violation of the Insurance Fair Conduct

18    Act ("IFCA"). Allstate moves for summary-judgment dismissal.

19   **II.     APPLICABLE LAW**

20        Federal Rule of Civil Procedure 56(a) mandates that a motion for summary judgment be

21    granted when "the movant shows that there is no genuine dispute as to any material fact and the

22    movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There exists a genuine

23    issue as to a particular fact—and hence that fact "can be resolved only by a finder of fact" at

24    trial—when "[it] may reasonably be resolved in favor of either party"; conversely, there exists no

25    genuine issue when reasonable minds could not differ as to the import of the evidence. *Anderson*

26    *v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986). Whether a particular fact is material, in

1  turn, is determined by the substantive law of the case: "Only disputes over facts that might affect

2  the outcome of the suit under the governing law will properly preclude the entry of summary

3  judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

4  Summary judgment, then, demands an inquiry into "whether the evidence presents a sufficient

5  disagreement to require submission to a jury or whether it is so one-sided that one party must

6  prevail as a matter of law"; if applying the relevant law to those facts about which no two

7  reasonable factfinders could disagree dictates that the moving party must prevail, then a motion

8  for summary judgment must be granted. *Id.* at 250–52.

9  **III.    DISCUSSION**

10      **A.    Contractual Claims**

11          Allstate first moves to dismiss Plaintiffs' claim for breach of contract. Plaintiffs do not

12  claim that Allstate failed to issue any payments that were due under the contract. Instead, they

13  argue that these payments were untimely made. Plaintiffs can show no language in the policy

14  contract indicating that Allstate was bound to a specific timeframe or that its payments were in

15  violation of that timeframe. The only basis for Plaintiffs' claim that the payments amounted to a

16  breach of contract is a line from a Washington Pattern Jury Instruction: "The failure to perform

17  fully a contractual duty when it is due is a breach of contract." WPI 302.01. There are two

18  problems with this authority. First, pattern jury instructions are not binding legal authority. *See*

19  *State v. Roggenkamp*, 64 P.3d 92, 98–99 (Wash. Ct. App. 2003). Second, even if the Court were

20  to base its decision on the jury instruction, Plaintiffs have not shown that there is a genuine issue

21  of material fact concerning the untimeliness of the payments. Plaintiffs state that the payment on

22  the Structure Claim was made 94 days after the original claim and the payment on the Contents

23  Claim was made 368 days after the original claim, but offer no argument to support the assertion

24  that these timeframes were untimely. Allstate's motion for summary judgment is GRANTED.

25      **B.    Extra-Contractual Claims**

26          Allstate next moves to dismiss Plaintiffs' claims for violation of the CPA, for bad faith,

1  and for violation of IFCA.

2      **1. Bad Faith**

3      Allstate moves to dismiss Plaintiffs' bad-faith claims on the grounds that they have failed

4  to demonstrate harm. Insurer bad faith claims are analyzed under a tort framework: duty, breach,

5  causation, and harm. *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr. Co.*, 169 P.3d 1, 8

6  (2007). In order to establish bad faith, an insured is required to show the breach was

7  unreasonable, frivolous, or unfounded. *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (1998).

8  Harm is an essential element of an action for an insurance company's bad faith handling of a

9  claim. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 670 (2008).

10      Plaintiffs argue that they were harmed in three ways: they were not able to fund the code

11  upgrades due to the delayed payments, they were not able to recoup depreciation losses by

12  completing repairs or purchasing replacement items of personal property, and they lost their

13  home in foreclosure. (Dkt. No. 30 at 10). The problem with these allegations is that they have no

14  support in the record; plaintiffs have provided no declarations or testimony to substantiate their

15  claims.[2] Plaintiffs have failed to establish a genuine issue of material fact with respect to their

16  bad faith claims.

17      **2. Insurance Fair Conduct Act**

18      Allstate moves to dismiss Plaintiffs' IFCA claims on the grounds, again, that Plaintiffs

19  have failed to show harm. IFCA, RCW 48.30.015, provides:

20      (1) Any first party claimant to a policy of insurance who is unreasonably denied a claim
21      for coverage or payment of benefits by an insurer may bring an action in the superior
        court of this state to recover the actual damages sustained, together with the costs of the
22      action, including reasonable attorneys' fees and litigation costs, as set forth in subsection
        (3) of this section.

23

24  ───────────────

25      [2] Plaintiffs provide a declaration from Mr. Howson, their public adjuster, in which he
    testifies about what Plaintiffs were planning to do with the money they expected to receive from
26  Allstate. Mr. Howson fails, however, to offer any reason why he might be qualified to speak on
    that issue.

The statute provides a list of violations that give rise to treble damages or to an award of attorney's fees and costs. This list includes violations of WAC 284-30-330, 350, 360, 370, and 380. RCW 48.30.015(5).

Plaintiffs' claims for bad faith and violation of the ICFA rely on three provisions of the WAC. The first, WAC 284-30-370, states: "Every Insurer must complete its investigation of a claim within thirty days after notification of claim, unless the investigation cannot reasonably be completed within that time. All persons involved in the investigation of a claim must provide reasonable assistance to the insurer in order to facilitate compliance with this provision." The second provision, WAC 284-30-330(7), states that compelling a claimant to initiate or submit to litigation to recover an amount due is an unfair or deceptive act or practice. The third provision, WAC 284-30-330(11), states that requiring an insured to submit a claim report and then requiring subsequent submissions with the same information is an unfair or deceptive act or practice.

As stated above, Plaintiffs have failed to demonstrate that any breach of these regulations caused them harm. Bare allegations by an attorney in a brief are no substitute for evidence in a record. *British Airways Board v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("[L]egal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists.") Plaintiffs have failed to show a genuine issue of material fact as to the harm elements and their IFCA claim fails as a matter of law.

### 3. Consumer Protection Act

Allstate argues that Plaintiffs should not recover on any of their extra-contractual claims under the CPA because they made material misrepresentations during the investigation of the loss. A finding of fraud on the part of an insured precludes recovery under the CPA. *Mut. of*

*Enumclaw Ins. Co. v. Cox*, 757 P.2d 499, 504 (Wash. 1988).[3] The misrepresentations in question concern the amount of Plaintiffs' monthly rent after the fire. Plaintiffs' public adjuster testified—and Plaintiffs do not dispute—that after the fire, Plaintiffs told Allstate that they would relocate to a rental home at a cost of $4000 per month. (Dkt. No. 25, Ex. C at 135). It was later revealed that Plaintiffs rented the house for one month before moving to a residence they owned and that the monthly obligation dropped from $4000 per month to approximately $2200 per month. (*Id.* at 135–43; Dkt. No. 23 at 3). Allstate claims that Plaintiffs did not inform them of the move and continued to accept the $4000 payments for six months before submitting a revised claim for rent.

In response, Plaintiffs make various arguments to the effect that Allstate should not be able to deny coverage. But Allstate is not seeking to deny coverage, so these arguments are irrelevant. Plaintiffs' response to the allegations of misrepresentation are 1) that they "vehemently deny" making misrepresentations and 2) that "Plaintiffs paid all of the money received from Allstate for the rental home ($4000 per month for 4 months) to Mr. Nguyen's brother, their landlord." (Dkt. No. 30 at 12). This is a wholly inadequate response. The fact that the money was given to a family member does not establish that the money was not obtained through misrepresentation. Plaintiffs do not dispute that they provided inaccurate and inflated information about where they were living and that these misrepresentations led to undeserved payments from Allstate. Under *Cox*, Plaintiffs are not entitled to recovery under the CPA. 757 P.2d at 504 ("The CPA exists to protect consumers, not to aid and abet fraud.").

Notwithstanding the issue of Plaintiffs' misrepresentations, Plaintiffs have failed to meet the pleading requirements for a CPA action. "[T]o prevail in a private CPA action and therefore be entitled to attorney fees, a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4)

---

[3] Allstate argues that the Court should extend this holding to all of Plaintiffs' claims, but the Court is not persuaded that an aggressive and expansionist approach is justified.

ORDER
PAGE - 8

injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). As discussed in each of the sections above, Plaintiffs do not show injury to business or property. For all these reasons, Plaintiffs' CPA claims are dismissed.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's motions for summary judgment are GRANTED. (Dkt. Nos. 21 & 24). Defendant's motion to exclude and for sanctions is DENIED. (Dkt. No. 40.) The case is DISMISSED. The Clerk is DIRECTED to CLOSE the case.

DATED this 20th day of June 2012.

John C. Coughenour
UNITED STATES DISTRICT JUDGE